IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT-LAUDERDALE DIVISION

| | | |
|---|---|---|
| Chivonne L. Henry, | ) | CIVIL ACTION NO._____ |
| | ) | COMPLAINT |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMAND |
| City College Inc., | ) | |
| | ) | |
| Defendant. | ) | |

<u>NATURE OF THE ACTION</u>

This is an action under Title VII of the Civil Rights Act of 1964 to correct unlawful national origin, religious and race-based employment practices, and to provide relief to Plaintiff Chivonne L. Henry who was adversely affected by such practices.  As alleged with greater specificity below, Defendant, City College Inc., subjected Plaintiff Chivonne L. Henry to discrimination, a hostile work environment and terminated her employment in retaliation for resisting said hostile work environment.

<u>JURISDICTION AND VENUE</u>

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to Section 703 of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e-2.

2.  The unlawful employment practices alleged in this Complaint were committed within the jurisdiction of the United States District Court for the Southern District of Florida, Fort-Lauderdale Division.

3.  Therefore, in accordance with 28 U.S.C. §1391 and 42 U.S.C. §2000(e)-2, venue is appropriate in this Court.

<u>PARTIES</u>

4.   Plaintiff, Chivonne L. Henry ("Henry"), was an employee of Defendant City College Inc., and the cause of action accrued in Broward County, Florida.

5.   Defendant, City College Inc. ("Defendant" or "Defendant College"), provides educational services in Broward County, Florida and employed Plaintiff Henry.

6.   At all relevant times, Defendant has continuously been doing business in the State of Florida and has continuously had at least 15 employees.

7.   At all relevant times, Defendant has been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).   At all relevant times, Defendant has continuously been an employer within the meaning of 42 U.S.C. §2000e (b).

<u>CONDITIONS PRECEDENT</u>

8.   Plaintiff Henry has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Plaintiff Henry timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) against Defendant College.  Pursuant to a work sharing agreement, the Charge was dual filed with the Florida Commission on Human Relations (FCHR).

9.   The EEOC sent Plaintiff Henry a Notice of Right to Sue on or about September 6, 2019. Plaintiff Henry timely commenced this action.

<u>STATEMENT OF FACTS</u>

10. Plaintiff Henry is an individual who is black, of British National Origin, and is Muslim.

11. On or about July 15, 2015, Plaintiff Henry began employment with Defendant College as a senior admissions representative.

12. On or about July 15, 2016, Plaintiff Henry became a master admissions representative.

13. When Plaintiff Henry was promoted to master admissions representative, her promotion was due to her meeting and exceeding all qualifications for said position.

14. During 2016, Plaintiff Henry was consistently ranked the highest at her campus location in sales numbers at Defendant College's Hollywood campus.  Plaintiff's efforts added and resulted in her director of admissions, Mr. Jonathan Watts, receiving accolades. Plaintiff Henry was the first at that Hollywood campus to reach her sales metrics back to back consistently and be promoted to master admissions representative. Plaintiff Henry received awards for highest referral rate, and highest conversions and highest start rate.

15. Despite causing Mr. Watts to get accolades for the Hollywood campus success, Mr. Watts often had outbursts and tirades in the workplace at the Hollywood campus of Defendant College.

16. Plaintiff Henry's promotion to master admissions representative was delayed by Mr. Watts due to Plaintiff Henry's complaints about Mr. Watts' hostile behavior in the workplace.

17. As a result of Plaintiff Henry's complaints about Mr. Watts, Mr. Watts ordered co-worker Joe Haeffle to lie about Plaintiff Henry. Specifically, Mr. Haeffle sent an e-mail to Mr. Watts falsely stating that Plaintiff Henry demeaned Mr. Haeffle and made him feel uncomfortable.

18. On or about April, 2016, Mr. Watts was fired by Defendant College.

19. On or about May, 2016, the new director of admissions, Laura Strong, began employment with Defendant College.

20. Ms. Strong supervised Plaintiff Henry.

21. On or about September, 2016, Plaintiff Henry converted to Islam.

22. Plaintiff Henry began wrapping her hair as part of her conversion to Islam, and Ms. Strong frequently disparaged Plaintiff Henry for doing so.

23. Due to Plaintiff Henry's race and religious faith, Ms. Strong consistently told Plaintiff Henry that she did not believe that her hair looked "professional," and would make comments such as, "I don't like your look." "You look like one of those ebony girls on those magazines, I guess you think it's in style."

24. Plaintiff Henry requested to leave her work desk so that she could do her daily prayer.

25. Plaintiff Henry's aforementioned request was denied and she was never allowed to leave her desk to pray.

26. Meanwhile, Ms. Strong allowed non-Muslim employees to take frequent 10-15 minute breaks to smoke cigarettes.

27. After Ms. Strong's employment, Plaintiff Henry received noticeably lower scores on her annual performance review in 2016, despite Plaintiff Henry ranking high in sales and metrics.

28. Ms. Strong also consistently disparaged Plaintiff Henry's British accent.

29. Ms. Strong also did other acts disparaging Plaintiff Henry's national origin. For example, one co-worker, Widlyn Daniels, told Plaintiff Henry that she was told by Ms. Strong to stop eating lunch with Plaintiff Henry because Plaintiff Henry did not understand American "culture."

30. When Plaintiff Henry's grandmother passed away, Ms. Strong prevented Plaintiff Henry from returning to England for her funeral.

31. Ms. Strong consistently yelled at Plaintiff Henry in front of Plaintiff Henry's co-workers.

32. Ms. Strong specifically told Plaintiff Henry that she is not allowed to ask questions during meetings.

33. Ms. Strong also made several derogatory racial comments about Plaintiff Henry. For example, on or about the review period for Plaintiff Henry at approximately the beginning of 2017 Ms. Strong, Plaintiff Henry and Brooks had a meeting regarding the tension between Ms. Strong and Plaintiff Henry.  Plaintiff Henry, in her attempt to stop the conflict, began to state during the meeting, "I believe that Ms. Strong and I have similar commonalities and want the same thing which is to be successful…", Ms. Strong then  interrupted Plaintiff Henry with disgust, and stated, "I would never want someone who looks like *that* to compare themselves to me."

34. On or about the end of summer in 2017, Ms. Strong took away more and more of Plaintiff Henry's duties and gave them to an non-British, non-Muslim, Marvin Chin, and non-British, non-Muslim, white employee, Rebecca Geddule, even though Plaintiff Henry had superior sales numbers and a much higher rank that that of Mr. Chin and Ms. Geddule.

35. On or about December 2016 Ms. Strong began complaining that Plaintiff Henry was typing "too fast."

36. Nonetheless, Plaintiff Henry consistently tried to keep the morale of the sales team high by doing acts such as buying the whole team lunch without reimbursement and mentoring those who were struggling metrically with their positions and Ms. Strong's management style.

37. After suffering a car accident in January 2017 the day after a meeting that challenged Plaintiff Henry's religious attire, Plaintiff Henry had regularly scheduled doctor's appointments for physical therapy.

38. Ms. Strong ordered Plaintiff Henry to e-mail her every time she was going to a doctor's appointment despite the fact that the doctor's appointments were always on the same day and at the same time.

39. Plaintiff Henry complied by consistently sending the requested e-mails. In fact, Plaintiff Henry sent several calendar invites to Ms. Strong so that the doctor's appointments could be put on Ms. Strong's work calendar. Ms. Strong always rejected the calendar invites.

40. Nonetheless, on or about October 2017, Plaintiff Henry was given a disciplinary write up for allegedly leaving and coming back from doctor's appointments without notice.

41. In reality, Plaintiff Henry was written up for resisting the hostile work environment caused by Ms. Strong and for being a black, British, Muslim person.

42. All the write-ups that Plaintiff Henry received were part of scheme by Defendant College to have a pre-textual excuse to terminate Plaintiff Henry's employment.

43. Less than a month after filing a charge with the EEOC, Plaintiff Henry's employment was terminated in retaliation for resisting Defendant's discrimination and for filing a Charge with the EEOC.

44. Virginia Llano is the person who told Plaintiff Henry that her employment was being terminated while another regional senior admissions employee, Elizabeth, was in the room. Ms. Llano said Plaintiff Henry was being terminated for making too many complaints against Ms. Strong.  Plaintiff Henry asked for this in writing and was ignored. Plaintiff Henry also sent an e-mail confirming these facts as soon as she returned home and the e-mail was yet again ignored.

45. At all times material, Mr. Watts, Ms. Strong, Ms. Strong's superiors, Mr. Haeffle, Mr. Chin, Rebecca Geddule, Defendant's human resources department, Brooks, Virginia Llano, and Elizabeth were acting within the scope of their employment with Defendant College.

<u>COUNT I</u>

<u>HOSTILE WORK ENVIRONMENT BASED ON RACE</u>

46. Plaintiff Henry incorporates the allegations contained in the preceding paragraphs 1-9 as if fully set forth herein.

47. Plaintiff Henry is black.

48. Plaintiff Henry was the victim of discrimination on the basis of her race in violation of Title VII of the Civil Rights Act.

49. On or about July 15, 2015, Plaintiff Henry began employment with Defendant College as a senior admissions representative.

50. On or about July 15, 2016, Plaintiff Henry became a master admissions representative.

51. When Plaintiff Henry was promoted to master admissions representative, her promotion was due to her meeting and exceeding all qualifications for said position.

52. On or about May, 2016, the new director of admissions, Laura Strong, began employment with Defendant College.

53. Ms. Strong supervised Plaintiff Henry.

54. Due to Plaintiff Henry's race, Ms. Strong consistently told Plaintiff Henry that she did not believe that her hair looked "professional," and would make comments such as, "I don't like your look." "You look like one of those ebony girls on those magazines, I guess you think it's in style."

55. After Ms. Strong's employment, Plaintiff Henry, due to her race, received noticeably lower scores on her annual performance review in 2016, despite Plaintiff Henry ranking high in sales and metrics.

56. Ms. Strong consistently yelled at Plaintiff Henry in front of Plaintiff Henry's co-workers due to Plaintiff's race.

57. Due to Plaintiff Henry's race, Ms. Strong specifically told Plaintiff Henry that she is not allowed to ask questions during meetings.

58. Ms. Strong made several other derogatory racial comments about Plaintiff Henry. For example, on or about the review period for Plaintiff Henry at approximately the beginning of 2017 Ms. Strong, Plaintiff Henry and Brooks had a meeting regarding the tension between Ms. Strong and Plaintiff Henry. Plaintiff Henry, in her attempt to stop the conflict, began to state during the meeting, "I believe that Ms. Strong and I have similar commonalities and want the same thing which is to be successful…", Ms. Strong then  interrupted Plaintiff Henry with disgust, and stated, "I would never want someone who looks like *that* to compare themselves to me."

59. Due to Plaintiff Henry's race, on or about the end of summer in 2017, Ms. Strong took away more and more of Plaintiff Henry's duties and gave them to a white employee, Rebecca Geddule, even though Plaintiff Henry had superior sales numbers and a much higher rank than that of Ms. Geddule.

60. Due to Plaintiff Henry's race, Ms. Strong also began ordering Plaintiff Henry's co-workers to not eat lunch with Plaintiff Henry.

61. Due to Plaintiff Henry's race, Ms. Strong also ordered Plaintiff Henry not to appear in her work space outside of her regular work hours.

62. Ms. Strong has racial animus towards black people.  Ms. Strong did not make racial comments about non-black employees.

63. The totality of Ms. Strong's aforementioned hostile behavior towards Plaintiff was sufficiently severe and pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.

64. Similarly-situated employees not in Plaintiff's protected class of black, were more favorably treated, such as Rebecca Geddule.

65. Ms. Strong continued the hostile work environment by terminating Plaintiff Henry's employment due to her race.

66. Plaintiff is qualified for the position of master admissions representative.

67. As a result of the Defendant's unlawful hostile work environment based on her race, Plaintiff has suffered mental anguish and embarrassment.

68. At all times material, Mr. Watts, Ms. Strong, Ms. Strong's superiors, Mr. Haeffle, Mr. Chin, Rebecca Geddule, Defendant's human resources department, Brooks, Virginia Llano, and Elizabeth were acting within the scope of their employment with Defendant College.

69. Plaintiff has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

70. The EEOC issued a Notice of Right to Sue dated September 6, 2019. Plaintiff timely commenced this action.

WHEREFORE Plaintiff Chivonne L. Henry demands judgment against Defendant for compensatory damages, back wages, front pay, emotional pain and mental anguish, punitive damages, costs and attorneys' fees.

<u>COUNT II</u>

<u>HOSTILE WORK ENVIRONMENT BASED ON NATIONAL ORIGIN</u>

71. Plaintiff Henry incorporates the allegations contained in the preceding paragraphs 1-9 as if fully set forth herein.

72. Plaintiff Henry is of British national origin.

73. Plaintiff Henry was the victim of discrimination on the basis of her national origin in violation of Title VII of the Civil Rights Act.

74. On or about July 15, 2015, Plaintiff Henry began employment with Defendant College as a senior admissions representative.

75. On or about July 15, 2016, Plaintiff Henry became a master admissions representative.

76. When Plaintiff Henry was promoted to master admissions representative, her promotion was due to her meeting and exceeding all qualifications for said position.

77. During 2016, Plaintiff Henry was consistently ranked the highest at her campus location in sales numbers at Defendant College's Hollywood campus.  Plaintiff's efforts added and resulted in her director of admissions, Mr. Jonathan Watts, receiving accolades. Plaintiff Henry was the first at that Hollywood campus to reach her sales metrics back to back consistently and be promoted to master admissions representative. Plaintiff Henry received awards for highest referral rate, and highest conversions and highest start rate.

78. On or about May, 2016, the new director of admissions, Laura Strong, began employment with Defendant College.

79. Ms. Strong supervised Plaintiff Henry.

80. Ms. Strong consistently disparaged Plaintiff Henry's British accent.

81. When Plaintiff Henry's grandmother passed away, Ms. Strong prevented Plaintiff Henry from returning to England for her funeral.

82. One co-worker, Widlyn Daniels, reported to Plaintiff Henry that Ms. Daniels was told by Ms. Strong to stop eating lunch with Plaintiff Henry because Plaintiff Henry did not understand American "culture."

83. Due to Plaintiff Henry's national origin, Ms. Strong consistently yelled at Plaintiff Henry in front of Plaintiff Henry's co-workers due to Plaintiff Henry's national origin.

84. Due to Plaintiff Henry's national origin, on or about the end of summer in 2017, Ms. Strong took away more and more of Plaintiff Henry's duties and gave them to two non-British employees, Rebecca Geddule and Marvin Chin, even though Plaintiff Henry had superior sales numbers and a much higher rank than that of Ms. Geddule and Mr. Chin.

85. Due to Plaintiff Henry's national origin, Ms. Strong also began ordering Plaintiff Henry's co-workers to not eat lunch with Plaintiff Henry.

86. Due to Plaintiff's national origin, Ms. Strong also ordered Plaintiff Henry not to appear in her work space outside of her regular work hours.

87. After Ms. Strong's employment, Plaintiff Henry, due to her due to her national origin, received noticeably lower scores on her annual performance review in 2016, despite Plaintiff Henry ranking high in sales and metrics.

88. Ms. Strong has animus towards people of British descent.  Ms. Strong did not make national origin comments about non-British employees.

89. The totality of Ms. Strong's aforementioned hostile behavior towards Plaintiff was sufficiently severe and pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.

90. Similarly-situated employees not in Plaintiff's protected class of British, were more favorably treated, such as Rebecca Geddule.

91. Ms. Strong continued the hostile work environment by terminating Plaintiff Henry's employment due to her national origin.

92. Plaintiff is qualified for the position of master admissions representative.

93. As a result of the Defendant's unlawful hostile work environment based on her national origin, Plaintiff has suffered mental anguish and embarrassment.

94. At all times material, Mr. Watts, Ms. Strong, Ms. Strong's superiors, Mr. Haeffle, Mr. Chin, Rebecca Geddule, Defendant's human resources department, Brooks, Virginia Llano, and Elizabeth were acting within the scope of their employment with Defendant College.

95. Plaintiff has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

96. The EEOC issued a Notice of Right to Sue dated September 6, 2019. Plaintiff timely commenced this action.

WHEREFORE Plaintiff Chivonne L. Henry demands judgment against Defendant for compensatory damages, back wages, front pay, emotional pain and mental anguish, punitive damages, costs and attorneys' fees.

<u>COUNT III</u>

<u>HOSTILE WORK ENVIRONMENT BASED ON RELIGION</u>

97. Plaintiff Henry incorporates the allegations contained in the preceding paragraphs 1-9 as if fully set forth herein.

98. Plaintiff Henry is Muslim.

99. Plaintiff Henry was the victim of discrimination on the basis of her religion in violation of Title VII of the Civil Rights Act.

100.     On or about July 15, 2015, Plaintiff Henry began employment with Defendant College as a senior admissions representative.

101.     On or about July 15, 2016, Plaintiff Henry became a master admissions representative.

102.     When Plaintiff Henry was promoted to master admissions representative, her promotion was due to her meeting and exceeding all qualifications for said position.

103.     During 2016, Plaintiff Henry was consistently ranked the highest at her campus location in sales numbers at Defendant College's Hollywood campus.  Plaintiff's efforts added and resulted in her director of admissions, Mr. Jonathan Watts, receiving accolades. Plaintiff Henry was the first at that Hollywood campus to reach her sales metrics back to back consistently and be promoted to master admissions representative. Plaintiff Henry received awards for highest referral rate, and highest conversions and highest start rate.

104.     On or about May, 2016, the new director of admissions, Laura Strong, began employment with Defendant College.

105.     Ms. Strong supervised Plaintiff Henry.

106.     On or about September, 2016, Plaintiff Henry converted to Islam.

107.     Plaintiff Henry began wrapping her hair as part of her conversion to Islam, and Ms. Strong frequently disparaged Plaintiff Henry for doing so.

108.     Due to Plaintiff Henry's religious faith, Ms. Strong consistently told Plaintiff Henry that she did not believe that her hair looked "professional," and would make comments such as, "I don't like your look."

109.     Plaintiff Henry requested to leave her work desk so that she could do her daily prayer.

110.     Plaintiff Henry's aforementioned request was denied and she was never allowed to leave her desk to pray.

111.     Meanwhile, Ms. Strong allowed non-Muslim employees to take frequent 10-15 minute breaks to smoke cigarettes.

112.     Ms. Strong consistently yelled at Plaintiff Henry in front of Plaintiff Henry's co-workers due to Plaintiff Henry's religion.

113.     Due to Plaintiff Henry being Muslim, on or about the end of summer in 2017, Ms. Strong took away more and more of Plaintiff Henry's duties and gave them to a non-Muslim employees, Marvin Chin and Rebecca Geddule, even though Plaintiff Henry had superior sales numbers and a much higher rank than that of Ms. Geddule and Mr. Chin.

114.     Due to Plaintiff Henry being Muslim, Ms. Strong also began ordering Plaintiff Henry's co-workers to not eat lunch with Plaintiff Henry.

115.     Due to Plaintiff Henry being Muslim, Ms. Strong also ordered Plaintiff Henry not to appear in her work space outside of her regular work hours.

116.     After Ms. Strong's employment, Plaintiff Henry, due to her due to her religion, received noticeably lower scores on her annual performance review in 2016, despite Plaintiff Henry ranking high in sales and metrics.

117.     Ms. Strong has animus towards people of Muslim faith.  Ms. Strong did not make derogatory religious comments about non-Muslim employees.

118.     The totality of Ms. Strong's aforementioned hostile behavior towards Plaintiff was sufficiently severe and pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.

119.     Similarly-situated employees not in Plaintiff's protected class of Muslim, were more favorably treated, such as Rebecca Geddule.

120.     Ms. Strong continued the hostile work environment by terminating Plaintiff Henry's employment due to her religion.

121.     Plaintiff is qualified for the position of master admissions representative.

122.     As a result of the Defendant's unlawful hostile work environment based on her religion, Plaintiff has suffered mental anguish and embarrassment.

123.     At all times material, Mr. Watts, Ms. Strong, Ms. Strong's superiors, Mr. Haeffle, Mr. Chin, Rebecca Geddule, Defendant's human resources department, Brooks, Virginia Llano, and Elizabeth were acting within the scope of their employment with Defendant College.

124.     Plaintiff has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

125.     The EEOC issued a Notice of Right to Sue dated September 6, 2019. Plaintiff timely commenced this action.

WHEREFORE Plaintiff Chivonne L. Henry demands judgment against Defendant for compensatory damages, back wages, front pay, emotional pain and mental anguish, punitive damages, costs and attorneys' fees.

## COUNT IV

## RACE DISCRIMINATION

### (Termination)

126.     Plaintiff Henry incorporates the allegations contained in the preceding paragraphs 1-9 as if fully set forth herein.

127.     Plaintiff Henry is black.

128.     Plaintiff Henry was the victim of discrimination on the basis of her race in violation of Title VII of the Civil Rights Act.

129.     On or about July 15, 2015, Plaintiff Henry began employment with Defendant College as a senior admissions representative.

130.     On or about July 15, 2016, Plaintiff Henry became a master admissions representative.

131.     When Plaintiff Henry was promoted to master admissions representative, her promotion was due to her meeting and exceeding all qualifications for said position.

132.     On or about May, 2016, the new director of admissions, Laura Strong, began employment with Defendant College.

133.     Ms. Strong supervised Plaintiff Henry.

134.     Due to Plaintiff Henry's race, Ms. Strong consistently told Plaintiff Henry that she did not believe that her hair looked "professional," and would make comments such as, "I don't like your look." "You look like one of those ebony girls on those magazines, I guess you think it's in style."

135.     After Ms. Strong's employment, Plaintiff Henry, due to her race, received noticeably lower scores on her annual performance review in 2016, despite Plaintiff Henry ranking high in sales and metrics.

136.     Ms. Strong consistently yelled at Plaintiff Henry in front of Plaintiff Henry's co-workers due to Plaintiff's race.

137.     Due to Plaintiff Henry's race, Ms. Strong specifically told Plaintiff Henry that she is not allowed to ask questions during meetings.

138.     Ms. Strong made several other derogatory racial comments about Plaintiff Henry. For example, on or about the review period for Plaintiff Henry at approximately the beginning of 2017 Ms. Strong, Plaintiff Henry and Brooks had a meeting regarding the tension between Ms. Strong and Plaintiff Henry.  Plaintiff Henry, in her attempt to stop the conflict, began to state during the meeting, "I believe that Ms. Strong and I have similar commonalities and want the same thing which is to be successful…", Ms. Strong then  interrupted Plaintiff Henry with disgust, and stated, "I would never want someone who looks like *that* to compare themselves to me."

139.     Due to Plaintiff Henry's race, on or about the end of summer in 2017, Ms. Strong took away more and more of Plaintiff Henry's duties and gave them to a white employee, Rebecca Geddule, even though Plaintiff Henry had superior sales numbers and a much higher rank than that of Ms. Geddule.

140.     Due to Plaintiff Henry's race, Ms. Strong also began ordering Plaintiff Henry's co-workers to not eat lunch with Plaintiff Henry.

141.     Due to Plaintiff Henry's race, Ms. Strong also ordered Plaintiff Henry not to appear in her work space outside of her regular work hours.

142.     On or about February 26, 2018, Defendant terminated Plaintiff Henry's employment due to Plaintiff Henry's race, which is the adverse employment action at issue in this count.

143.     Ms. Strong has racial animus towards black people.  Ms. Strong did not make racial comments about non-black employees.

144.     Similarly-situated employees, not in Plaintiff's protected class of black, were more favorably treated, such as Rebecca Geddule.

145.     Plaintiff is qualified for the position of master admissions representative.

146.     As a result of the Defendant's unlawful termination based on Plaintiff Henry's race, Plaintiff has suffered mental anguish and embarrassment.

147.     At all times material, Mr. Watts, Ms. Strong, Ms. Strong's superiors, Mr. Haeffle, Mr. Chin, Rebecca Geddule, Defendant's human resources department, Brooks, Virginia Llano, and Elizabeth were acting within the scope of their employment with Defendant College.

148.     Plaintiff has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

149.     The EEOC issued a Notice of Right to Sue dated September 6, 2019. Plaintiff timely commenced this action.

WHEREFORE Plaintiff Chivonne L. Henry demands judgment against Defendant for compensatory damages, back wages, front pay, emotional pain and mental anguish, punitive damages, costs and attorneys' fees.

## COUNT V

## NATIONAL ORIGIN DISCRIMINATION

### (Termination)

150.     Plaintiff Henry incorporates the allegations contained in the preceding paragraphs 1-9 as if fully set forth herein.

151.     Plaintiff Henry is of British national origin.

152.     Plaintiff Henry was the victim of discrimination on the basis of her national origin in violation of Title VII of the Civil Rights Act.

153.     On or about July 15, 2015, Plaintiff Henry began employment with Defendant College as a senior admissions representative.

154.     On or about July 15, 2016, Plaintiff Henry became a master admissions representative.

155.     When Plaintiff Henry was promoted to master admissions representative, her promotion was due to her meeting and exceeding all qualifications for said position.

156.     During 2016, Plaintiff Henry was consistently ranked the highest in sales numbers at Defendant College's Hollywood campus.   Plaintiff's efforts resulted in her director of admissions, Mr. Jonathan Watts, receiving accolades. Plaintiff Henry was the first at that Hollywood campus to reach her sales metrics back to back consistently. Plaintiff Henry received awards for highest referral rate, and highest conversions.

157.     On or about May, 2016, the new director of admissions, Laura Strong, began employment with Defendant College.

158.     Ms. Strong supervised Plaintiff Henry.

159.     Ms. Strong consistently disparaged Plaintiff Henry's British accent.

160.     When Plaintiff Henry's grandmother passed away, Ms. Strong prevented Plaintiff Henry from returning to England for her funeral.

161.     A co-worker, Widlyn Daniels, reported to Plaintiff Henry that Ms. Daniels was told by Ms. Strong to stop eating lunch with Plaintiff Henry because Plaintiff Henry did not understand American "culture."

162.     Ms. Strong consistently yelled at Plaintiff Henry in front of Plaintiff Henry's co-workers due to Plaintiff Henry's national origin.

163.     Due to Plaintiff Henry's national origin, Ms. Strong also began ordering Plaintiff Henry's co-workers to not eat lunch with Plaintiff Henry.

164.     Due to Plaintiff Henry's national origin, Ms. Strong also ordered Plaintiff Henry not to appear in her work space outside of her regular work hours.

165.     Due to Plaintiff Henry's national origin, on or about the end of summer in 2017, Ms. Strong took away more and more of Plaintiff Henry's duties and gave them to non-British employees, Rebecca Geddule and Marvin Chin, even though Plaintiff Henry had superior sales numbers and a much higher rank than that of Ms. Geddule and Mr. Chin.

166.     After Ms. Strong's employment, Plaintiff Henry, due to her national origin, received noticeably lower scores on her annual performance review in 2016, despite Plaintiff Henry ranking high in sales and metrics.

167.     On or about February 26, 2018, Defendant terminated Plaintiff Henry's employment due to Plaintiff Henry's national origin, which is the adverse employment action at issue in this count.

168.     Ms. Strong has animus towards British people.  Ms. Strong did not make national origin comments about non-British employees.

169.     Similarly-situated employees, not in Plaintiff's protected class of British, were more favorably treated, such as Rebecca Geddule.

170.     Plaintiff is qualified for the position of master admissions representative.

171.     As a result of the Defendant's unlawful termination based on Plaintiff Henry's national origin, Plaintiff has suffered mental anguish and embarrassment.

172.     At all times material, Mr. Watts, Ms. Strong, Ms. Strong's superiors, Mr. Haeffle, Mr. Chin, Rebecca Geddule, Defendant's human resources department, Brooks, Virginia Llano, and Elizabeth were acting within the scope of their employment with Defendant College.

173.     Plaintiff has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

174.     The EEOC issued a Notice of Right to Sue dated September 6, 2019. Plaintiff timely commenced this action.

WHEREFORE Plaintiff Chivonne L. Henry demands judgment against Defendant for compensatory damages, back wages, front pay, emotional pain and mental anguish, punitive damages, costs and attorneys' fees.

COUNT VI

RELIGIOUS DISCRIMINATION

(Termination)

175.     Plaintiff Henry incorporates the allegations contained in the preceding paragraphs 1-9 as if fully set forth herein.

176.     Plaintiff Henry is Muslim.

177.     Plaintiff Henry was the victim of discrimination on the basis of her religion in violation of Title VII of the Civil Rights Act.

178.     On or about July 15, 2015, Plaintiff Henry began employment with Defendant College as a senior admissions representative.

179.     On or about July 15, 2016, Plaintiff Henry became a master admissions representative.

180.     When Plaintiff Henry was promoted to master admissions representative, her promotion was due to her meeting and exceeding all qualifications for said position.

181.     During 2016, Plaintiff Henry was consistently ranked the highest at her campus location in sales numbers at Defendant College's Hollywood campus.  Plaintiff's efforts added and resulted in her director of admissions, Mr. Jonathan Watts, receiving accolades. Plaintiff Henry was the first at that Hollywood campus to reach her sales metrics back to back consistently and be promoted to master admissions representative. Plaintiff Henry received awards for highest referral rate, and highest conversions and highest start rate.

182.     On or about May, 2016, the new director of admissions, Laura Strong, began employment with Defendant College.

183.     Ms. Strong supervised Plaintiff Henry.

184.     On or about September, 2016, Plaintiff Henry converted to Islam.

185.     Plaintiff Henry began wrapping her hair as part of her conversion to Islam, and Ms. Strong frequently disparaged Plaintiff Henry for doing so.

186.     Ms. Strong consistently told Plaintiff Henry to stop wrapping her hair, and would make comments such as, "I don't like your look."

187.     Plaintiff Henry requested to leave her work desk so that she could do her daily prayer.

188.     Plaintiff Henry's aforementioned request was denied and she was never allowed to leave her desk to pray.

189.     Meanwhile, Ms. Strong allowed non-Muslim employees to take frequent 10-15 minute breaks to smoke cigarettes.

190.     Ms. Strong consistently yelled at Plaintiff Henry in front of Plaintiff Henry's co-workers due to Plaintiff Henry's religion.

191.     Due to Plaintiff Henry's religion, Ms. Strong also began ordering Plaintiff Henry's co-workers to not eat lunch with Plaintiff Henry.

192.     On or about the end of summer in 2017, Ms. Strong took away more and more of Plaintiff Henry's duties and gave them to non-Muslim employees, Rebecca Geddule and Marvin Chin, even though Plaintiff Henry had superior sales numbers and a much higher rank than that of Ms. Geddule.

193.     Due to Plaintiff Henry's religion, Ms. Strong also ordered Plaintiff Henry not to appear in her work space outside of her regular work hours.

194.     After Ms. Strong's employment, Plaintiff Henry, due to her religion, received noticeably lower scores on her annual performance review in 2016, despite Plaintiff Henry ranking high in sales and metrics.

195.     On or about February 26, 2018, Defendant terminated Plaintiff Henry's employment due to Plaintiff Henry's religion, which is the adverse employment action at issue in this count.

196.     Ms. Strong has animus towards Muslim people.   Ms. Strong did not make religious comments about non-Muslim employees.

197.     Similarly-situated employees, not in Plaintiff's protected class of Muslim, were more favorably treated, such as Rebecca Geddule.

198.     Plaintiff is qualified for the position of master admissions representative.

199.     As a result of the Defendant's unlawful termination based on Plaintiff Henry's religion, Plaintiff has suffered mental anguish and embarrassment.

200.     At all times material, Mr. Watts, Ms. Strong, Ms. Strong's superiors, Mr. Haeffle, Mr. Chin, Rebecca Geddule, Defendant's human resources department, Brooks, Virginia Llano, and Elizabeth were acting within the scope of their employment with Defendant College.

201.     Plaintiff has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

202.     The EEOC issued a Notice of Right to Sue dated September 6, 2019. Plaintiff timely commenced this action.

WHEREFORE Plaintiff Chivonne L. Henry demands judgment against Defendant for compensatory damages, back wages, front pay, emotional pain and mental anguish, punitive damages, costs and attorneys' fees.

## COUNT VII
## RETALIATION DUE TO OPPOSING RACE DISCRIMINATION
### (Termination)

203.     The allegations set forth in Paragraphs 1 through 9 are re-alleged as if fully set forth herein.

204.     Plaintiff Henry was the victim of retaliation due to her opposing a hostile work environment based on her race in violation of Title VII of the Civil Rights Act.

205.     Plaintiff Henry is an individual who is black.

206.     On or about July 15, 2015, Plaintiff Henry began employment with Defendant College as a senior admissions representative.

207.     On or about July 15, 2016, Plaintiff Henry became a master admissions representative.

208.     When Plaintiff Henry was promoted to master admissions representative, her promotion was due to her meeting and exceeding all qualifications for said position.

209.     On or about May, 2016, the new director of admissions, Laura Strong, began employment with Defendant College.

210.     Ms. Strong supervised Plaintiff Henry.

211.     Due to Plaintiff Henry's race, Ms. Strong consistently told Plaintiff Henry that she did not believe that her hair looked "professional," and would make comments such as, "I don't like your look." "You look like one of those ebony girls on those magazines, I guess you think it's in style."

212.     After Ms. Strong's employment, Plaintiff Henry, due to her race, received noticeably lower scores on her annual performance review in 2016, despite Plaintiff Henry ranking high in sales and metrics.

213.     Ms. Strong consistently yelled at Plaintiff Henry in front of Plaintiff Henry's co-workers due to Plaintiff's race.

214.     Due to Plaintiff Henry's race, Ms. Strong specifically told Plaintiff Henry that she is not allowed to ask questions during meetings.

215.     Ms. Strong made several other derogatory racial comments about Plaintiff Henry. For example, on or about the review period for Plaintiff Henry at approximately the beginning of 2017 Ms. Strong, Plaintiff Henry and Brooks had a meeting regarding the tension between Ms. Strong and Plaintiff Henry.  Plaintiff Henry, in her attempt to stop the conflict, began to state during the meeting, "I believe that Ms. Strong and I have similar commonalities and want the same thing which is to be successful…", Ms. Strong then  interrupted Plaintiff Henry with disgust, and stated, "I would never want someone who looks like *that* to compare themselves to me."

216.     On or about the end of summer in 2017, Ms. Strong took away more and more of Plaintiff Henry's duties and gave them to a white employee, Rebecca Geddule, even though Plaintiff Henry had superior sales numbers and a much higher rank than that of Ms. Geddule.

217.     Due to Plaintiff Henry's race, Ms. Strong also began ordering Plaintiff Henry's co-workers to not eat lunch with Plaintiff Henry.

218.     Due to Plaintiff Henry's race, Ms. Strong also ordered Plaintiff Henry not to appear in her work space outside of her regular work hours.

219.     Ms. Strong has racial animus towards black people.  Ms. Strong did not make racial comments about non-black employees.

220.     All the write-ups that Plaintiff Henry received were part of a scheme by Defendant College to have a pre-textual excuse to terminate Plaintiff Henry's employment.

221.     As a consequence of opposing Ms. Strong's hostile work environment based on her race, Plaintiff Henry was terminated from her employment on February 26, 2018, which is shortly after Plaintiff Henry filed her EEOC Charge against Defendant.

222.      Virginia Llano is the person who told Plaintiff Henry that her employment was being terminated while another human resource employee, Elizabeth, was in the room. Ms. Llano said Plaintiff Henry was being terminated for making too many complaints against Ms. Strong.

223.      Title VII of the Civil Rights Act outlaws retaliation, which occurs when an employer discriminates against an employee because that person has opposed any practice which is an unlawful employment practice.

224.      The hostile work environment that was created by Ms. Strong was based on Plaintiff's race, which is an unlawful employment practice.

225.      Prior to termination, Plaintiff opposed Ms. Strong's hostile work environment by reporting Ms. Strong to human resources numerous times. Ms. Strong, Ms. Strong's superiors, Brooks, and human resources, including Virginia Llano, were aware of said opposition.

226.      When human resources failed to stop the aforementioned hostile work environment, Plaintiff Henry opposed Ms. Strong's hostile work environment based on race by filing a charge with the EEOC based on Ms. Strong's aforementioned discrimination.

227.      Defendant has no legitimate non-retaliatory, non-discriminatory reason for terminating Plaintiff's employment.

228.      Ms. Strong, Ms. Strong's superiors, Brooks, and human resources, including Virginia Llano, were aware that Plaintiff opposed the aforementioned hostile work environment by reporting Ms. Strong to human resources and filing a Charge with the EEOC.

229.      Plaintiff is qualified for the position of master admissions representative.

230.     As a result of the Defendant's unlawful retaliatory conduct of terminating Plaintiff Henry's employment for resisting the aforementioned hostile work environment, Plaintiff suffered mental anguish and embarrassment.

231.     At all times material, Mr. Watts, Ms. Strong, Ms. Strong's superiors, Mr. Haeffle, Mr. Chin, Rebecca Geddule, Defendant's human resources department, Brooks, Virginia Llano, and Elizabeth were acting within the scope of their employment with Defendant College.

232.     Plaintiff has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

233.     The EEOC issued a Notice of Right to Sue dated September 6, 2019. Plaintiff timely commenced this action.

WHEREFORE Plaintiff Chivonne L. Henry demands judgment against Defendant for compensatory damages, back wages, front pay, emotional pain and mental anguish, punitive damages, costs and attorneys' fees.

## COUNT VIII
### RETALIATION DUE TO OPPOSING NATIONAL ORIGIN DISCRIMINATION
### (Termination)

234.     The allegations set forth in Paragraphs 1 through 9 are re-alleged as if fully set forth herein.

235.     Plaintiff Henry was the victim of retaliation due to her opposing a hostile work environment based on her national origin in violation of Title VII of the Civil Rights Act.

236.     Plaintiff Henry is an individual who is British.

237.     On or about July 15, 2015, Plaintiff Henry began employment with Defendant College as a senior admissions representative.

238.     On or about July 15, 2016, Plaintiff Henry became a master admissions representative.

239.     When Plaintiff Henry was promoted to master admissions representative, her promotion was due to her meeting and exceeding all qualifications for said position.

240.     During 2016, Plaintiff Henry was consistently ranked the highest in sales numbers at Defendant College's Hollywood campus.   Plaintiff's efforts resulted in her director of admissions, Mr. Jonathan Watts, receiving accolades. Plaintiff Henry was the first at that Hollywood campus to reach her sales metrics back to back consistently. Plaintiff Henry received awards for highest referral rate, and highest conversions.

241.     On or about May, 2016, the new director of admissions, Laura Strong, began employment with Defendant College.

242.     Ms. Strong supervised Plaintiff Henry.

243.     Ms. Strong consistently disparaged Plaintiff Henry's British accent.

244.     When Plaintiff Henry's grandmother passed away, Ms. Strong prevented Plaintiff Henry from returning to England for her funeral.

245.     One co-worker, Widlyn Daniels, reported to Plaintiff Henry that Ms. Daniels was told by Ms. Strong to stop eating lunch with Plaintiff Henry because Plaintiff Henry did not understand American "culture."

246.     After Ms. Strong's employment, Plaintiff Henry, due to her national origin, received noticeably lower scores on her annual performance review in 2016, despite Plaintiff Henry ranking high in sales and metrics.

247.     Ms. Strong consistently yelled at Plaintiff Henry in front of Plaintiff Henry's co-workers due to Plaintiff Henry's national origin.

248.     Due to Plaintiff's national origin, on or about the end of summer in 2017, Ms. Strong took away more and more of Plaintiff Henry's duties and gave them to non-British employees, Rebecca Geddule and Marvin Chin, even though Plaintiff Henry had superior sales numbers and a much higher rank than that of Ms. Geddule and Mr. Chin.

249.     Due to Plaintiff Henry's national origin, Ms. Strong also began ordering Plaintiff Henry's co-workers to not eat lunch with Plaintiff Henry.

250.     Due to Plaintiff Henry's national origin, Ms. Strong also ordered Plaintiff Henry not to appear in her work space outside of her regular work hours.

251.     Ms. Strong has animus towards British people.  Ms. Strong did not make national origin comments about non-British employees.

252.     All the write-ups that Plaintiff Henry received were part of a scheme by Defendant College to have a pre-textual excuse to terminate Plaintiff Henry's employment.

253.     As a consequence of opposing Ms. Strong's hostile work environment based on her national origin, Plaintiff Henry was terminated from her employment on February 26, 2018, which is shortly after Plaintiff Henry filed her EEOC Charge against Defendant.

254.     Virginia Llano is the person who told Plaintiff Henry that her employment was being terminated while another human resource employee, Elizabeth, was in the room. Ms. Llano said Plaintiff Henry was being terminated for making too many complaints against Ms. Strong.

255.     Title VII of the Civil Rights Act outlaws retaliation, which occurs when an employer discriminates against an employee because that person has opposed any practice which is an unlawful employment practice.

256.    The hostile work environment that was created by Ms. Strong was based on Plaintiff's national origin, which is an unlawful employment practice.

257.    Prior to termination, Plaintiff opposed Ms. Strong's hostile work environment by reporting Ms. Strong to human resources numerous times.  Ms. Strong, Ms. Strong's superiors, Brooks, and human resources, including Virginia Llano, were aware of said opposition.

258.    When human resources failed to stop the aforementioned hostile work environment, Plaintiff Henry opposed Ms. Strong's hostile work environment based on national origin by filing a charge with the EEOC based on Ms. Strong's aforementioned discrimination.

259.    Defendant has no legitimate non-retaliatory, non-discriminatory reason for terminating Plaintiff's employment.

260.    Ms. Strong, Ms. Strong's superiors, Brooks, and human resources, including Virginia Llano, were aware that Plaintiff opposed the aforementioned hostile work environment by reporting Ms. Strong to human resources and filing a Charge with the EEOC.

261.    Plaintiff is qualified for the position of master admissions representative.

262.    As a result of the Defendant's unlawful retaliatory conduct of terminating Plaintiff Henry's employment for resisting the aforementioned hostile work environment, Plaintiff suffered mental anguish and embarrassment.

263.    At all times material, Mr. Watts, Ms. Strong, Ms. Strong's superiors, Mr. Haeffle, Mr. Chin, Rebecca Geddule, Defendant's human resources department, Brooks, Virginia Llano, and Elizabeth were acting within the scope of their employment with Defendant College.

264.     Plaintiff has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

265.     The EEOC issued a Notice of Right to Sue dated September 6, 2019. Plaintiff timely commenced this action.

WHEREFORE Plaintiff Chivonne L. Henry demands judgment against Defendant for compensatory damages, back wages, front pay, emotional pain and mental anguish, punitive damages, costs and attorneys' fees.

## COUNT IX
## RETALIATION DUE TO OPPOSING RELIGIOUS DISCRIMINATION
### (Termination)

266.     The allegations set forth in Paragraphs 1 through 9 are re-alleged as if fully set forth herein.

267.     Plaintiff Henry was the victim of retaliation due to her opposing a hostile work environment based on her religion in violation of Title VII of the Civil Rights Act.

268.     Plaintiff Henry is an individual who is Muslim.

269.     On or about July 15, 2015, Plaintiff Henry began employment with Defendant College as a senior admissions representative.

270.     On or about July 15, 2016, Plaintiff Henry became a master admissions representative.

271.     When Plaintiff Henry was promoted to master admissions representative, her promotion was due to her meeting and exceeding all qualifications for said position.

272.     During 2016, Plaintiff Henry was consistently ranked the highest at her campus location in sales numbers at Defendant College's Hollywood campus.  Plaintiff's efforts added and resulted in her director of admissions, Mr. Jonathan Watts, receiving accolades. Plaintiff Henry was the first at that Hollywood campus to reach her sales metrics back to back consistently and be promoted to master admissions representative. Plaintiff Henry received awards for highest referral rate, and highest conversions and highest start rate.

273.     On or about May, 2016, the new director of admissions, Laura Strong, began employment with Defendant College.

274.     Ms. Strong supervised Plaintiff Henry.

275.     On or about September, 2016, Plaintiff Henry converted to Islam.

276.     Plaintiff Henry began wrapping her hair as part of her conversion to Islam, and Ms. Strong frequently disparaged Plaintiff Henry for doing so.

277.     Ms. Strong consistently told Plaintiff Henry to stop wrapping her hair, and would make comments such as, "I don't like your look."

278.     Plaintiff Henry requested to leave her work desk so that she could do her daily prayer.

279.     Plaintiff Henry's aforementioned request was denied and she was never allowed to leave her desk to pray.

280.     Meanwhile, Ms. Strong allowed non-Muslim employees to take frequent 10-15 minute breaks to smoke cigarettes.

281.     Ms. Strong consistently yelled at Plaintiff Henry in front of Plaintiff Henry's co-workers due to Plaintiff Henry's religion.

282.     Due to Plaintiff Henry's religion, Ms. Strong also began ordering Plaintiff Henry's co-workers to not eat lunch with Plaintiff Henry.

283.     Due to Plaintiff Henry's religion, Ms. Strong also ordered Plaintiff Henry not to appear in her work space outside of her regular work hours.

284.     On or about the end of summer in 2017, Ms. Strong took away more and more of Plaintiff Henry's duties and gave them to non-Muslim employees, Rebecca Geddule and Marvin Chin, even though Plaintiff Henry had superior sales numbers and a much higher rank than that of Ms. Geddule and Mr. Chin.

285.     After Ms. Strong's employment, Plaintiff Henry, due to her religious discrimination, received noticeably lower scores on her annual performance review in 2016, despite Plaintiff Henry ranking high in sales and metrics.

286.     All the write-ups that Plaintiff Henry received were part of a scheme by Defendant College to have a pre-textual excuse to terminate Plaintiff Henry's employment.

287.     As a consequence of opposing Ms. Strong's hostile work environment based on her religion, Plaintiff Henry was terminated from her employment on February 26, 2018, which is shortly after Plaintiff Henry filed her EEOC Charge against Defendant.

288.     Virginia Llano is the person who told Plaintiff Henry that her employment was being terminated while another human resource employee, Elizabeth, was in the room. Ms. Llano said Plaintiff Henry was being terminated for making too many complaints against Ms. Strong.

289.     Title VII of the Civil Rights Act outlaws retaliation, which occurs when an employer discriminates against an employee because that person has opposed any practice which is an unlawful employment practice.

290.     The hostile work environment that was created by Ms. Strong due to Plaintiff's religion is an unlawful employment practice.

291.     Prior to termination, Plaintiff opposed Ms. Strong's hostile work environment by reporting Ms. Strong to human resources numerous times. Ms. Strong, Ms. Strong's superiors, Brooks, and human resources, including Virginia Llano, were aware of said opposition.

292.     When human resources failed to stop the aforementioned hostile work environment, Plaintiff Henry opposed Ms. Strong's hostile work environment based on religion by filing a charge with the EEOC based on Ms. Strong's aforementioned discrimination.

293.     Defendant has no legitimate non-retaliatory, non-discriminatory reason for terminating Plaintiff's employment.

294.     Ms. Strong, Ms. Strong's superiors, Brooks, and human resources, including Virginia Llano, were aware that Plaintiff opposed the aforementioned hostile work environment by reporting Ms. Strong to human resources and filing a Charge with the EEOC.

295.     Plaintiff is qualified for the position of master admissions representative.

296.     As a result of the Defendant's unlawful retaliatory conduct of terminating Plaintiff Henry's employment for resisting the aforementioned hostile work environment, Plaintiff suffered mental anguish and embarrassment.

297.     At all times material, Mr. Watts, Ms. Strong, Ms. Strong's superiors, Mr. Haeffle, Mr. Chin, Rebecca Geddule, Defendant's human resources department, Brooks, Virginia Llano, and Elizabeth were acting within the scope of their employment with Defendant College.

298.     Plaintiff has exhausted all the requisite administrative remedies prior to bringing this action. Specifically, but not as a limitation, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

299.     The EEOC issued a Notice of Right to Sue dated September 6, 2019. Plaintiff timely commenced this action.

WHEREFORE Plaintiff Chivonne L. Henry demands judgment against Defendant for compensatory damages, back wages, front pay, emotional pain and mental anguish, punitive damages, costs and attorneys' fees.

JURY TRIAL DEMAND

Plaintiff Chivonne L. Henry demands a trial by jury on all issues so triable.

Date: Thursday, December 05, 2019

Respectfully submitted,

/s *Nnamdi Jackson*
Nnamdi S. Jackson, Esq.
Fla. Bar No. 99804

**THE LAW OFFICE OF NNAMDI S. JACKSON, P.A.**
2645 Executive Park Drive,
Suite 340
Weston, Florida 33331
(954) 670-1267
njackson@nsjlawoffice.com